CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 27 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| IN RE: GRAND JURY PROCEEDINGS | ) ) ) ) ) ) ) ) | Civil Action No. 7:15-CV-00081<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>Chief United States District Judge |

This matter is presently before the court on a motion to modify or quash a grand jury subpoena duces tecum and for a protective order, filed by Chem-Solv, Inc. ("Chem-Solv"), which is the target of an ongoing grand jury investigation. For the reasons set forth below, that motion will be denied in part and dismissed in part as moot.

### Factual and Procedural Background

Chem-Solv is a regional, family-owned chemical distribution company headquartered in Roanoke, Virginia. In 2012, the U.S. Attorney's Office for the Western District of Virginia ("the government") began an investigation of Chem-Solv related to two alleged releases of chemicals at a Chem-Solv facility. The government issued two grand jury subpoenas duces tecum in connection with this investigation on July 26, 2012 and May 30, 2014. Chem-Solv asserts that it has produced tens of thousands of documents in response to these subpoenas, and that it continues to produce relevant documents as they are reviewed.

During the course of its investigation, the government became concerned that Chem-Solv directed its employees to hide certain chemicals on trailers in anticipation of an Environmental Protection Agency ("EPA") inspection of its facility in 2013. Chem-Solv denies this allegation. The government informed the EPA of its discovery; however, the EPA "declined to take action" to investigate further at that time.

On November 19, 2014, the government conducted a search of one of these trailers pursuant to a search warrant. An EPA representative assisted the government in taking samples and documenting materials during the search. The government asserts that initial screening of at least one sample revealed "hazardous characteristics," as that term is defined by the Resource Conservation and Recovery Act of 1975 ("RCRA"). The government again informed the EPA of its findings, and the EPA again "declined to take action," according to Chem-Solv.

On December 3, 2014, after Chem-Solv informed the government that it intended to sell products stored on the trailer that had been searched, the government issued a third subpoena duces tecum designed to gather additional information about the materials stored on that trailer. Shortly after the government served that subpoena, Chem-Solv informed the government that it objected to its contents. In Chem-Solv's view, the subpoena impermissibly asks it to make testimonial statements by creating documents that it would not otherwise maintain in the ordinary course of business. Shortly thereafter, the EPA served Chem-Solv with a civil Request for Information ("RFI"), pursuant to Section 3007(a) of the RCRA, 42 U.S.C. § 6297(a), seeking largely identical information to that requested by the contested subpoena.

Chem-Solv filed this motion on January 16, 2015. The court held a hearing on the motion on February 25, 2015. The motion has been fully briefed and is now ripe for review.

## Discussion

In its motion, Chem-Solv asks the court to modify or quash the December 3 subpoena duces tecum, arguing that it impermissibly seeks to elicit testimonial statements by asking Chem-Solv to create documents that it otherwise would not maintain in the ordinary course of business. Chem-Solv also asks the court to issue a protective order preventing the government from

2

presenting to the grand jury any information that the EPA obtains through its civil RFI, or alternatively, to issue a stay of the EPA's civil investigation. Chem-Solv argues that the government cannot "directly or indirectly sponsor[] a civil discovery request for the purpose of aiding a criminal investigation" without violating Chem-Solv's due process rights.

At the outset, the court notes that it agrees that the subpoena at issue, in its original form, fails to comply with Rule 17(c) of the Federal Rules of Civil Procedure. At oral argument, however, the government informed the court that it intends to withdraw the subpoena and reissue it in an acceptable form. The parties also agreed that Chem-Solv will have until March 27, 2015 to respond to the new subpoena. In light of the government's decision to withdraw and amend the flawed subpoena, the court will dismiss Chem-Solv's motion to quash or modify the original subpoena as moot.

The court does not agree, however, that Chem-Solv is entitled to a protective order prohibiting the government from obtaining and using information uncovered by the EPA in the course of its civil investigation; nor is Chem-Solv entitled to a stay of the EPA's civil investigation. Parallel criminal and civil investigations generally do not threaten a defendant's due process rights. See United States v. Kordel, 397 U.S. 1, 11 (1970). In Kordel, the Supreme Court held that the government did not violate due process when it used evidence obtained from a civil FDA investigation to convict the defendants of criminal misbranding, because the government did not obtain that evidence in bad faith. Id. The Kordel Court stated that bad faith would exist if the government

> brought a civil action solely to obtain evidence for its criminal prosecution or [] failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; ...[or when] any other special circumstances ...might suggest the unconstitutionality or even the impropriety of [a] criminal prosecution.

3

Id. at 11-12. Under Kordel, prosecutors can use information obtained from a parallel civil investigation without violating a defendant's due process rights, so long as there is no evidence of affirmative misrepresentations, trickery, deceit, or other outrageous conduct. See, e.g., United States v. Stringer, 535 F.3d 929, 933 (9th Cir. 2008) (no bad faith where SEC did not affirmatively mislead defendants as to the possibility of a criminal investigation or charges, even when the SEC collaborated with the government and "facilitated the criminal investigation").

Chem-Solv argues that the proximity between its objection to the government's faulty subpoena and the EPA's issuance of an RFI seeking "nearly identical" information, along with the fact that the EPA had earlier "declined" to investigate, demonstrates that the government has initiated the civil investigation solely to obtain evidence for its criminal case. The court does not believe, however, that the factual circumstances presented here actually reflect any bad faith. The government has not misled Chem-Solv regarding the nature of these parallel criminal and civil investigations. Furthermore, Chem-Solv has not shown that the EPA's investigation is solely pretext designed to acquire information that the government could not otherwise obtain. In fact, counsel for Chem-Solv admitted at oral argument that the government is perfectly capable of obtaining this information directly by calling witnesses to testify in front of the grand jury. There is no evidence suggesting that the EPA does not actually intend to investigate Chem-Solv in accordance with its civil regulatory powers. At this stage in the proceedings, the court does not find any clear "departure from the proper administration of criminal justice" warranting judicial intervention. United States v. Scrushy, 366 F. Supp. 2d 1134, 1137 (N.D. Ala. 2005) (suppressing civil deposition testimony and dismissing perjury charges when trial testimony revealed that an SEC investigator had moved the defendant's deposition to a new location for

4

venue purposes and avoided specific lines of questioning at the request of criminal prosecutors). The court will therefore deny Chem-Solv's motion for a protective order or stay of the EPA's civil investigation.

## Conclusion

For the reasons stated, Chem-Solv's motion is denied in part and dismissed in part as moot. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 27th day of February, 2015.

/s/ Glen Conrad
Chief United States District Judge